**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 22, 2009

Charles R. Fulbruge III
Clerk

No. 08-50793
Summary Calendar

CRAE ROBERT PEASE

Plaintiff-Appellant

v.

FIRST NATIONAL BANK, Giddings; BILLY MORGAN; T MARK ROGSTADT

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CV-631

Before JONES, Chief Judge, and STEWART and OWEN, Circuit Judges.

EDITH H. JONES, Chief Judge:[*]

Crae Robert Pease sued Appellees for deprivation of his Fourth, Fifth, and Fourteenth Amendment rights. Because Pease has not stated a claim cognizable in federal court, we affirm the district court's dismissal of all claims.

## I. BACKGROUND

In 2002, Pease executed a note to First National Bank, Giddings, for $111,236.36. Pease also signed an extension of real estate lien note for $110,204.77. The bank recorded a deed of trust to secure these loans. Some

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

time later, the Bank provided notice to Pease that he had defaulted on the loan and then gave notice of a substitute trustee's sale on April 7, 2006. Billy Morgan, an officer of the Bank, appointed T. Mark Rogstadt, an attorney employed by the Bank, as substitute trustee to sell the property. Pease filed a suit to quiet title to the property in state court on April 28. The property was sold on May 5, and Lee County Sheriff Rodney Meyer gave notice to Pease to vacate the property.

The Bank counterclaimed for forcible detainer in the quiet title action. On October 17, 2006, Judge Reva Towslee-Corbett held that the bank was the owner and title holder and ordered Pease to vacate the property. At the time of this appeal, Pease continued to occupy the property.

In federal court, Pease sued the Bank, Morgan, Rogstadt, Sheriff Meyer, and Judge Towslee-Corbett, alleging that the home foreclosure deprived him of his rights and property without due process through fraud and deceit in violation of the Fourth, Fifth, and Fourteenth Amendments. He sought $150,000 in damages and $350,000 in punitive damages. The district court granted the Bank's, Morgan's, and Rogstadt's Motion to Dismiss, finding that Pease had not adequately alleged that these defendants were state actors for the purposes of 42 U.S.C. § 1983 and § 985.[1] The district court also declined to exercise jurisdiction over any pendent state claims.

Pease appeals.

## II. DISCUSSION

The grant of a motion to dismiss under Rule 12(b)(6) is reviewed de novo. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004). We construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *See Lovick v. Ritemoney Ltd.*,

---

[1] In a separate order that is not before us, the district court also dismissed all claims against the remaining parties.

378 F.3d 433, 437 (5th Cir. 2004). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

In his *pro se* brief to this court, Pease argues that the state counter-claim in the quiet title action was improperly presented, brought in the wrong court, and was never properly served on him. Because the state court did not have jurisdiction to try a forcible detainer case, he contends that any resulting order was void. He also claims that no landlord-tenant relationship existed between himself and the Bank, that the promissory note and underlying deed of trust were satisfied, and that the deed of trust had expired. This court will construe a *pro se* appellant's claims liberally rather than hold him to the standards expected of lawyers. *See United States v. Glinsey*, 209 F.3d 386, 392 n.4 (5th Cir. 2000). We, therefore, divide Pease's arguments on appeal into two categories—those attacking the procedure in the state court and those attacking the merits of the state court's judgment.

Section 1983 claims arising from foreclosure proceedings are not new. The Supreme Court has held that foreclosure procedures implicate the Fourteenth Amendment only where there is at least some direct state involvement in the execution of the foreclosure or seizure. *See Fuentes v. Shevin*, 407 U.S. 67, 70-71, 92 S. Ct. 1983 (1972). The Court has contrasted what types of actions will amount to actions of the state. *Compare Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 102 S. Ct. 2744 (1982) (finding state action where a creditor's ex parte petition for a writ of prejudgment attachment was executed by the county sheriff, sequestering the property pending adjudication of the claim) *with Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S. Ct. 1729 (1978) (holding that the legislative approval of a private self-help remedy is not sufficient to convert private conduct into state action). Fatal to Pease's claims, this court has held that "no significant state action is involved in non-judicial foreclosures under a

deed of trust." *Barrera v. Security Bldg. & Inv. Corp.*, 519 F.2d 1166, 1170 (5th Cir. 1975).

In *Earnest v. Lowentritt*, 690 F.2d 1198, 1201 (5th Cir. 1982), a property was sold in a foreclosure action by sheriff's sale. The original property owners' § 1983 and § 1985 claims were dismissed because they failed to meet the state action requirement. The owners alleged, as in this case, that a conspiracy existed between the state judge and the defendant sufficient to satisfy the state action requirement. This court held that "unlike the situation involving pre-adjudicative seizures, the execution order permitting the sheriff to sell the Earnest property was obtained only after notice to the debtor and the opportunity to be heard concerning the merits of the seizure." *Id.* at 1202. Consequently, neither the forcible detainer action nor the actions of Appellees in pursuing it gave rise to state action sanctionable under §§ 1983 and 1985.

Pease's suit fails for an additional reason. Pease claims that he is "not complaining of the foreclosure, [he] is complaining that the bank, acting under color of law (forcible detainer) conspired with state actors, Towslee-Corbett and Meyers [sic] to implement an ejection action in a court that was without subject matter jurisdiction." In short, Pease asserts that his due process rights were violated when the counterclaim was heard in the incorrect state court. Even assuming that his jurisdictional arguments are correct, the Constitution's guarantee of due process is not offended when the wrong state court determines a matter of state law. *Cf. Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483, 102 S. Ct. 1883, 1898 (1982) (holding that in the "full faith and credit" context that "no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause").

Finally, to the extent Pease is challenging the merits of the foreclosure, we will not entertain a collateral attack on the final judgment of a state court. As

we read the briefs and the record, Pease's state court case is over.[2]  In light of the finality of the state court proceedings, Pease's claims are barred by the *Rooker-Feldman* doctrine, which deprives federal courts of subject matter jurisdiction to review a final state court decision arising out of a judicial proceeding unless a federal statute specifically authorizes such review.  *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923); *see also  Johnson v. De Grandy*, 512 U.S. 997, 1005-1006, 114 S. Ct. 2647 (1994) (*Rooker-Feldman* bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").  The Supreme Court recently reaffirmed that a federal  court has no jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005).  The *Rooker-Feldman* doctrine would bar this court from hearing any challenge to the foreclosure order because it is a challenge "in which the constitutional claims presented . . . are inextricably intertwined with the state court's grant or denial of relief."  *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986).

## III. CONCLUSION

For the foregoing reasons, the district court's judgment of dismissal is **AFFIRMED.**

---

[2]Pease contended below that his state court proceeding was not yet final.  We, however, find no evidence of this in the record.  In fact, Pease admits in his brief to this court that his state appeal was dismissed for want of prosecution.