# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02223-SCT

*WALTER W. ECKMAN*

*v.*

*COOPER TIRE & RUBBER COMPANY AND*
*SHANAN PROFESSIONAL REVIEW SERVICES,*
*INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/3/2003 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS WICKER |
| ATTORNEY FOR APPELLEE: | WILLIAM C. MURPHREE |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 09/09/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND DICKINSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1.     This is an appeal from a summary judgment granted in favor of Cooper Tire & Rubber Company (Cooper) and Shanan Professional Review Services, Inc. (Shanan). The trial court granted summary judgment on the basis that Cooper and Shanan were immune from liability for defamation based upon qualified privilege.

¶2.     Walter W. Eckman, M.D. (Eckman), sued Cooper and Shanan alleging that they prepared and published reports which contained false, defamatory and libelous statements concerning him. Eckman also alleged that Cooper and Shanan exceeded the scope of any qualified privilege regarding any legitimate

review process. Cooper and Shanan subsequently filed their motion for summary judgment, and the trial court entered a partial summary judgment, noting that the motion only addressed the issue of defamation and qualified privilege. The trial court found that the alleged defamatory statements were protected by qualified privilege, they were not excessively published, and that Eckman failed to create a genuine issue of material fact regarding actual malice. As authorized by M.R.C.P. 54(b), the trial court certified that judgment as final. It is from this judgment that Eckman appeals to this Court and submits the following issues:

I.      **Whether the trial court erred in finding that the defendants were protected by qualified privilege.**

II.     **Whether the trial court erred in finding that there was no genuine issue of material fact regarding actual malice.**

**FACTS**

¶3.     Eckman is a physician specializing in neurological surgery in Tupelo, Mississippi. In 1998, Eckman treated two patients, Tony Wood and Danny Jarvis, both of whom were employed by Cooper. Both patients underwent surgical procedures which were submitted to Cooper for reimbursement under its employee healthcare plan. Under Cooper's healthcare plan, payment would be made for "medically necessary" services, which are defined as medical services which are required and appropriate for the treatment of a specific medical condition.

¶4.     Eckman's office submitted billings to Cooper for reimbursement for Eckman's professional services. Pursuant to Miss. Code Ann. § 41-63-3 (Rev. 2001), Cooper engaged Shanan Professional Review Services to evaluate the medical services Eckman provided. Shanan provided "retrospective utilization reviews," which were to be based upon all medical records, hospital bills and such other information as would be necessary for the purpose of evaluating the medical services, level of care, and

billing practices pertaining to such claims. Shanan in turn engaged two physicians, Dr. P. L. Soni and Dr. John Lehman, to do the evaluations. In their evaluations, both physicians questioned the necessity of the surgeries Eckman performed, and Dr. Soni commented: "It is embarrassing to me that there are people in my profession which would resort to tactics like these and give the entire profession a bad name. *To me, this borders on white collar crime."* (emphasis added).

¶5. Cooper and Shanan kept the review confidential, and no one other than persons at Cooper and Shanan had access to these reviews.

¶6. After receiving the reviews, Cooper declined to pay for Eckman's professional services. Eckman then requested a copy of the reviews and learned of the comments concerning his practice. During depositions, Eckman testified that the only people who have read or heard the allegedly defamatory remarks about him worked for Aurora Spine Center, Eckman's clinic. These people testified that anything they read about Eckman from Cooper or Shanan, they read during their work in communicating with Cooper as to the denial of payment for Jarvis or Wood.

## ANALYSIS

¶7. The standard for review for summary judgments in Mississippi is well established. The Court reviews summary judgments de novo. *Hardy v. Brock*, 826 So.2d 71, 74 (Miss. 2002). The facts are viewed in light most favorable to the nonmoving party. *Id.* The existence of a genuine issue of material fact will preclude summary judgment. *Id.* Where disputed facts exist or where different interpretations or inferences may be drawn from undisputed facts, summary judgment is inappropriate. *See Johnson v. City of Cleveland*, 846 So.2d 1031, 1036 (Miss. 2003).

I.  **Whether the trial court erred in finding that the defendants were protected by qualified privilege.**

¶8.     When analyzing defamation claims, Mississippi courts employ a bifurcated process. First, the Court must determine whether the occasion called for a qualified privilege. If a qualified privilege does exist, the Court must then determine whether the privilege is overcome by malice, bad faith, or abuse. *Garziano v. E.I. Dupont de Nemours & Co.*, 818 F.2d 380, 386-87 (5th Cir. 1987) (applying Mississippi law). In *Smith v. White*, 799 So. 2d 83, 86 (Miss. 2001), this Court described the qualified privilege:

> A communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith.

¶9.     Eckman avers that the statements made by Soni and Lehman are not subject to qualified privilege. He contends that there is nothing in the contractual relationships existing between Cooper and Shanan which calls for statements regarding criminal culpability or professional competency. Rather, the scope of the communications involves the limited questions of medical necessity and the reasonableness of the charges. However, Cooper and Shanan assert that they both had an interest in the subject matter of the communications. Additionally, the doctors statements were made in reference to their interest and duties in regard to the review process and in accordance with Miss. Code Ann. § 41-63-3, which provides for the evaluation of medical services by independent reviewers. We find that a qualified privilege existed as to Shanan and Cooper because the statements were made to those with a direct interest in the subject matter.

¶10.    A qualified privilege does not protect a defamatory statement where there is excessive publication to persons not within the "circle" of those people who have a legitimate and direct interest in the subject mater of the communication. *Garziano*, 818 F.2d at 391-92. In the case at bar, the only people who read or heard of the defamatory remarks were Cooper, Shanan, and Eckman's own employees, who

4

testified that they read the remarks in the routine course of their business. Eckman avers that the remarks were excessively published because his employees either heard or read the defamatory remarks. However, this argument is without merit.

¶11. This Court's holding in *Staheli v. Smith*, 548 So.2d 1299 (Miss. 1989), is applicable to the case at bar. In *Staheli*, the University of Mississippi denied tenure to Staheli, who subsequently sued Smith, Dean of the School of Engineering, for defamation. Staheli charged that Smith defamed him by remarks and writings about him during the tenure process. This Court considered the issue of excessive publication and held that there was no publication "outside the circle" as the faculty senate were included in the tenure process, and Staheli brought the senate into the circle when he appealed the chancellor's decision. *Id.* at 1395-96. We find that as in *Staheli*, Eckman's employees were brought inside the circle when he requested a review of the statements. Therefore, there was not excessive publication because Cooper and Shanan confined the remarks about Eckman to those interested in the review process.

## II. Whether the trial court erred in finding that there was no genuine issue of material fact regarding actual malice.

¶12. If the publication is subject to the qualified privilege from business communications, liability for defamation may still attach upon a finding of malice, defined by this Court as "knowledge of falsity or reckless disregard to as to truth or falsity." *Hayden v. Foryt*, 407 So.2d 535, 536 (Miss. 1981). This Court further stated that if the defendant honestly believed the plaintiff's conduct to be such as he described it, the mere fact that he used strong words in describing it is no evidence of malice. *Id.* at 539. The fact that the expressions are angry and intemperate is not enough; the proof must go further and show that they are malicious. *Id.*

¶13.    The trial court held that Eckman failed to present any evidence that Cooper or Shanan acted with actual malice in publishing the statements. Furthermore, the trial court held that while some of the statements may indeed be characterized as intemperate, Eckman failed to create a genuine issue of material fact regarding malice. Eckman avers that the question of whether or not the statement was made with malice is an issue for the jury. *Smith*, 799 So.2d at 87. However, *Smith* is distinguished from the case at bar in that the jury in *Smith* heard testimony from witnesses regarding defamatory statements, and the evidence regarding such statements was widely disputed. Therefore, this Court found that the question of whether the statements were made with actual malice was a question for the jury.

¶14.    In the case sub judice, the trial court considered this case on a motion for summary judgment pursuant to M.R.C.P. 56. A jury does not decide whether a defendant acted with actual malice unless a genuine issue of material fact exists. This Court has made it clear that a plaintiff bears a heavy burden in proving actual malice. In *Scott-Burr Stores Corp. v. Edgar*, 181 Miss. 486, 177 So. 766, 770 (1938), this Court ruled:

> Actual or express malice, as distinguished from malice in law, in its ordinary sense denotes ill will, a sentiment or hate or spite, especially when harbored by one person toward another, and exists when one with a sedate, deliberate mind and formed design injures another, as where a person is actuated by ill will in what he does and says, with a design to willfully and wantonly injure another. *Newell on Slander and Libel*, 4th Ed. § 271 et seq.
>
> It is undisputed in the case at bar that Swanson had never before seen the appellee, and had no reason to entertain any ill will toward him.

¶15.    As in *Scott-Burr*, the two doctors reviewing Eckman's records and billings do not live in Mississippi; they do not know Eckman; and they have never had professional or personal contact with him. Eckman has not presented any affirmative evidence demonstrating that the physicians intentionally and

maliciously made these statements. Therefore, we find that there is no proof that these reviewing physicians harbored ill will toward Eckman and deliberately sought to injure him.

## CONCLUSION

¶16.    We find that a qualified privilege existed and that Cooper and Shanan did not abuse this privilege with excessive publication.  Additionally, we find that Eckman did not meet his burden of production and persuasion on the issue of actual malice.  Therefore, we affirm the trial court's judgment.

¶17.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON,  DICKINSON AND RANDOLPH,  JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.  DIAZ, J., NOT PARTICIPATING.**